**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MONTRELL OLIVER,** | : | |
|     Petitioner | : | |
| | : | |
|     v. | : | No. 16-cv-5537 |
| | : | |
| **SUPERINTENDENT TAMMY** | : | |
| **FERGUSON, et al.,** | : | |
|     Respondents | : | |

**SUPPLEMENTAL RESPONSE TO AMENDED
PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Montrell Oliver was convicted of first-degree murder in 1998. After resentencing pursuant to *Miller v. Alabama*, Oliver is presently serving a sentence of 24 years to life imprisonment. He has timely filed a petition for a writ of habeas corpus. As the Commonwealth has noted in its Response to Oliver's Amended Petition, it has undertaken an internal investigation regarding Oliver's claims. Response at 17 (noting that ongoing investigation "raised questions regarding trial counsel's performance that implicate both the fairness and validity of his conviction").

In early 2019, Oliver submitted a request that the Conviction Integrity Unit ("CIU") conduct an internal review of this matter, and the CIU provided Oliver with open-file discovery, including both the complete prosecution file and the Philadelphia Police Department's Homicide Investigation File ("H-file").

In order to facilitate this Court's review (and consistent with its ethical duties as prosecutors), the Commonwealth intends to join Oliver in filing Stipulations of Facts representing the relevant facts as disclosed during the Parties' reviews of the case and the CIU's independent investigation of Oliver's claims. Factual stipulations are "formal concessions . . . that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 677–78 (2010) (quoting 2 K. Broun, McCormick on Evidence § 254, p. 181 (6th ed. 2006) (footnote omitted)). In other words, a joint stipulation to facts "admits that there is no dispute as to the facts[.]" 83 C.J.S. Stipulations § 86 (footnote omitted). In light of the undisputed factual record, which the Parties intend to memorialize with formal stipulations, the Commonwealth no longer believes an evidentiary hearing to be necessary to resolve Oliver's ineffective assistance of counsel claim.[1]

As outlined below, the CIU's review has led it to conclude that Oliver's trial counsel was ineffective for failing to present his alibi witnesses.[2] The Commonwealth therefore concedes that Oliver is entitled to relief on this claim in light of the undisputed factual record.

---

[1] Should the Court grant relief as to the ineffective assistance of counsel ("IAC") claim, it need not address Oliver's remaining claims as relief on the IAC claim will render Oliver's remaining claims moot.

[2] Amended Petition for a Writ of Habeas Corpus at 10-11.

A. **Brief Case Overview.**[3]

The case against Oliver was never a strong one. While a number of witnesses implicated his codefendant, Omar Goldwire, Oliver's conviction rested on the testimony of a single person who did not witness the shooting, Marcus Best.

During voir dire, Oliver's trial counsel named June Bell, a friend of Oliver's, as a defense witness.[4] Then, when the Commonwealth presented its case, Best testified that Oliver was with him and others in the Goldwire house the night of the murder.

According to Best, Oliver left the house with a gun, after which Best heard gunshots, and then Oliver returned to the house. Best, however, was a compromised witness—he had previously planned robberies with the Goldwire brothers and had an open criminal case at the time of trial. No other evidence linked Oliver to the crime.

Meanwhile, in his opening statement, Oliver's trial counsel contended that Oliver was not involved in the shooting because he was not present at the scene and that the prosecution's evidence against him was too weak to demonstrate otherwise. The trial record also reflects that shortly before the defense began its case-in-chief, the court issued a bring-down order for Bell to be transported to court from the Youth Study Center the following morning when the defense presentation was set to begin. Yet, although Bell had been listed as an alibi witness and trial counsel ensured that she was included as a potential witness during voir dire, trial counsel never called Bell as a defense witness and he offered no evidence as to where Oliver actually was at the time of the shooting.

---

[3] The Commonwealth incorporates by reference the facts and procedural history as set forth in its initial Response. *See* Response at 1-5.

[4] Bell spoke with an investigator from Oliver's trial counsel's office in November 1997, which was around the time she was listed as an alibi witness for trial.

To buttress his defense theory that Oliver was not present at the scene, trial counsel put on only one witness: Omar Goldwire's sister, Monique Goldwire, who testified that Oliver was not at the Goldwire house on the night of the murder. Unpersuaded by her testimony, the jury ultimately credited Best's testimony and convicted Oliver. Then, during the penalty phase, Oliver testified that he spent the evening of the murder with Bell.

### B. The Commonwealth's Continued Investigation.

There is nothing in the trial record as to why Bell was not called to testify regarding Oliver's alibi. In fact, there is no mention as to whether Bell ever appeared pursuant to the bring-down order issued by the trial court during trial. The record is also silent as to whether she was even served with the bring-down order, and there is not even a suggestion that trial counsel took any further steps to secure her testimony.

Years after Oliver's conviction, Bell signed an affidavit for Oliver's habeas counsel stating that she "was not asked to testify" at Oliver's trial despite her willingness to testify regarding his alibi. It was also discovered that trial counsel likewise failed to present testimony from Jadean Whitmore, a potential defense witness who would have corroborated Bell's and Oliver's accounts of where they were at the time of the shooting - Oliver was with Whitmore earlier that night before he eventually left with Bell.

As noted in the Commonwealth's initial Response, Bell was subsequently interviewed by the Commonwealth (assistant district attorneys and an investigator from the CIU). *See* Response at 18 n.7. During that interview, Bell's account was consistent with her prior statements to Oliver's trial counsel. *Id.* Bell also confirmed that she was never brought to court for trial.

Although Bell admits to using Xanax and alcohol on the night of Bates's murder, her alibi statement is nevertheless credible such that it "raise[d] a number of questions regarding Best's testimony and Petitioner's involvement in the crime[.]." *Id.* at 20. Indeed, she was certain that Oliver was with her throughout the evening. While it is unclear whether Oliver's alibi is sufficient to demonstrate his innocence, it certainly suffices to call into question his guilt.

More specifically, during its investigation into Oliver's ineffective assistance claim, the Commonwealth discovered that it is likely Bell was never served with the trial court's bring-down order because the listed location—the Youth Study Center—was not where Bell was residing/detained at the time. In fact, on February 2, 2021, when the Commonwealth contacted the Juvenile Justice Services Center, which maintains records from the now-closed Youth Study Center, it was reported that they had no record of Bell ever being detained at that location on the dates in question. Instead of being at the Youth Study Center during Oliver's trial, records of Bell's juvenile incarceration and detention suggest that she was housed at a community-based shelter at the time.

### C. The Commonwealth concedes that Oliver's trial counsel was ineffective for failing to present his alibi defense.[5]

The Commonwealth agrees that Oliver's trial counsel was ineffective in failing to present Oliver's alibi defense. Had he done so, there is a reasonable likelihood that Oliver would have been acquitted. *Strickland v. Washington*, 466 U.S. 668 (1984) (ineffective assistance of counsel claims require showing (1) that

---

[5] Petitioners in federal habeas proceedings bear the burden of demonstrating their claims by a preponderance of the evidence. *E.g.*, *Parke v. Raley*, 506 U.S. 20, 31 (1992) (noting "the preponderance of the evidence standard applicable to constitutional claims raised on federal habeas"); *Sumner v. Mata*, 449 U.S. 539, 551 (1981). The Commonwealth concedes that Oliver has met this burden in light of the facts as outlined in the Parties Joint Factual Stipulations.

counsel's performance was deficient and (2) that this deficient performance prejudiced the petitioner).

### 1. Deficient Performance

In this case, Oliver's trial counsel was aware of a robust alibi defense and took the necessary steps to present it at trial but failed to do so when the time came. *McGahee v. U.S.*, 570 F.Supp.2d 723, 733 (E.D. Pa. 2008) (noting that an alibi defense is "among the most compelling defenses" one can advance at trial) (citing *Johnson v. Oklahoma*, 484 U.S. 878, 881 (1987)). "Any time a defendant's strategy is to show that the prosecution cannot prove that he was the perpetrator, evidence of an alibi is compelling." *Id.* at 735. That is especially so where the prosecution's case is as thin as the one presented here.

Trial counsel's failure cannot be attributed to any reasonable "strategic judgment." *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 943 (3d Cir. 2019) (citation omitted). Rather, he simply failed to properly secure the attendance of his most important alibi witness, Bell. Although he had provided the appropriate alibi notice, ensured that she was listed as a potential witness during voire dire, and arranged for the court to issue a bring-down order, that order was directed to the wrong institution. When Bell failed to appear, he apparently abandoned her critical testimony.

Trial counsel's failure to correctly subpoena Bell, a critical alibi witness to pair with counsel's argument that Oliver was not present on the night of the murder, compounded by his failure to request a continuance to secure her appearance or even mention her absence on the record, was deficient performance. *See*, *e.g.*, *Gregg v. Rockview*, 596 Fed. App'x 72, 77–78 (3d Cir. 2015) ("To provide competent assistance . . . counsel should have employed [a subpoena], at a minimum, to secure the attendance of the defense's key witness."). There is no

evidence to suggest that this was a strategic decision by trial counsel. In fact, the evidence suggests just the opposite: that the decision had been made to call Bell as an alibi witness, that the bring down order was sent to the wrong place, and that Bell's testimony was apparently abandoned when she failed to appear as a result of counsel's errors.[6]

### 2. Prejudice

The Commonwealth also concedes that there is a reasonable probability that, but for trial counsel's failures, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Indeed, after completing a comprehensive review of the case, including an independent interview of the critical witnesses, the Commonwealth no longer has confidence in the integrity of Oliver's trial. As in *Gregg*, the evidence against Oliver was "at best, weak." 596 Fed. App'x at 78. Indeed, there was no forensic evidence placing Oliver at the scene of the crime and no eyewitness to the shooting that identified Oliver. The only witness placing Oliver near the scene of the crime was Best, whose account was far from unimpeachable.

Best testified that he was at the Goldwire residence on the night of the murder along with Oliver, Omar and Khalif Goldwire, and another man named Jimmy. He said he saw Oliver and Jimmy leave the Goldwire house with a shotgun and a handgun, then heard gunshots a few minutes later. Shortly thereafter, Oliver, Goldwire, and Jimmy ran back into the house, with Omar saying "damn man, y'all

---

[6] This error extends to the testimony of Jadean Whitmore, who would have corroborated Bell's and Oliver's accounts by testifying that Oliver had been with her earlier in the evening on the date of the murder and had left with Bell. Having apparently abandoned Bell's testimony, trial counsel had no reason to present Whitmore, who could not independently account for Oliver's whereabouts at the time of the murder. But because the apparent decision to abandon the alibi was unreasonable, the resulting abandonment of Whitmore's testimony was likewise unreasonable.

F'ed up like that." N.T., 2/9/1998, at 28. Oliver's trial counsel argued at trial that the two shooters were not Oliver and the mysterious Jimmy but were instead Best and Khalif Goldwire. If trial counsel had presented Bell's account that she was with Oliver throughout the night of the murder, it would have seriously undermined Best's credibility and bolstered Oliver's defense.[7] Trial counsel's failure to secure the appearance of Bell "undercut [Oliver's] ability to contradict this already shaky evidence of guilt." *Gregg*, 596 Fed. App'x at 78.

Of course, not every failure to present an alibi amounts to ineffective assistance of counsel. In *Jordan v. Superintendent Coal Township SCI*, 841 Fed. App'x 469, 474 (3d Cir. 2021), the Third Circuit affirmed the determination that a petitioner was not prejudiced by the failure to present an alibi. In that case, the evidence was "far from weak" and included the defendant's fingerprints at the scene, ballistic evidence, motive evidence, and the fact that the alibi still would have placed the defendant "two blocks from the scene." *Id*. The *only* evidence of Oliver's presence, let alone culpability, was the testimony of Best. Moreover, Oliver's alibi placed him across town, not mere blocks from the shooting.

The case against Oliver was weak, and there is a reasonable probability that the presentation of credible alibi evidence would have resulted in Oliver's acquittal. Oliver was prejudiced by his counsel's unreasonable failures.

---

[7] The Commonwealth conceded in its Response that Bell's account raised questions as to Oliver's guilt "but did not provide the necessary answers" because she was admittedly intoxicated for much of the night she was with Oliver. Response at 20. However, raising such questions is sufficient to demonstrate *Strickland* prejudice, as the relevant inquiry is whether there is a reasonably likelihood whether the outcome of trial would have been different, i.e., whether it's reasonably likely that the jury would have *doubted* Oliver's guilt. Oliver's trial counsel did not need to provide the jury with answers regarding his guilt or innocence, and Oliver need not do so in these proceedings to establish prejudice. Although the Commonwealth did not concede the issue of prejudice in its initial Response, further reflection upon the case and the relevant legal standards compels a concession at this time.

8

### D. Conclusion

The Commonwealth agrees that the undisputed facts of this case, as outlined above and as will be stipulated to in an anticipated separate filing by the Parties, demonstrate that Oliver has met his burden of proof to demonstrate that his trial counsel was ineffective. Accordingly, the Commonwealth concedes that Oliver is entitled to relief on that limited basis and that this Court should grant a conditional writ of habeas corpus.

                Respectfully submitted,

                LAWRENCE KRASNER
                District Attorney of Philadelphia

                PATRICIA CUMMINGS
                Supervisor, Conviction Integrity Unit

                */s/ David Napiorski*
                DAVID NAPIORSKI
                Assistant District Attorney
                Federal Litigation Unit
                District Attorney's Office
                Three South Penn Square
                Philadelphia, PA 19107
                215-686-5706

Date: May 7, 2020

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MONTRELL OLIVER,** :<br>        **Petitioner** :<br> : <br>     **v.** : <br> : <br>**SUPERINTENDENT TAMMY** :<br>**FERGUSON, et al.,** :<br>        **Respondents** : | No. 16-cv-5537 |

## CERTIFICATE OF SERVICE

   I, David J. Napiorski, hereby certify that on May 7, 2021, a copy of the foregoing Response was served *via* the Court's electronic filing system on the following:

Arianna J. Freeman & Joel Mandelman
Federal Community Defender Office
601 Walnut Street, Suite 540
Philadelphia, PA 19106
