IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MONTRELL OLIVER,** | CIVIL ACTION |
| *Petitioner,* | |
| v. | No. 16-cv-5537 |
| **SUPERINTENDENT BARRY SMITH, ET AL.,** | |
| *Respondents.* | |

**MEMORANDUM OPINION**

**Goldberg, J.**                                                                                                    **January 9, 2024**

      This opinion sets forth my reasons for approving and adopting the Report and Recommendation submitted by Magistrate Judge Elizabeth T. Hey regarding Montrell Oliver's petition for federal habeas relief.

**I.     Procedural History**

      On February 17, 1998, Petitioner was convicted in the Philadelphia Court of Common Pleas of first-degree murder, robbery, and other related offenses. These convictions stemmed from a drug dealing incident in which Petitioner and two co-defendants attempted to rob three men at gunpoint and shot into their car as they drove away, killing one of the passengers. The Commonwealth's primary witness, Marcus Best, testified that on the night of the murder, he saw Petitioner, his co-defendant Omar Goldwire, and a third co-defendant leave Goldwire's residence with guns in hand around midnight and then heard gunfire shortly thereafter. Best also testified that he then saw Petitioner and his accomplices return to the Goldwire residence, where Goldwire said to them "you fuck[ed] up." Commonwealth v. Oliver, No. 1355 Philadelphia 1998, Mem. at 3 (Pa. Super. Oct.

1

7, 1999) (quoting Commonwealth v. Oliver, CP-51-CR-0400362-1997, Op. at 1-3 (Phila. C.C.P. Aug. 13, 1998)).

The Commonwealth's case was not particularly strong. Best was the only witness who identified Petitioner as being involved in the murder, and other witnesses testified that they did not see Petitioner either at the scene of the murder or at the Goldwire residence with the other perpetrators afterwards. As far as I can tell, no forensic evidence tying Petitioner to the murder was introduced. (See Original Report and Recommendation, ECF No. 77).

Petitioner filed his counseled petition for writ of habeas corpus on March 18, 2019, raising nine claims for relief.[1] One of Petitioner's claims pertains to his trial counsel's alleged ineffectiveness for failing to call alibi witnesses. In its initial response to the counseled petition filed on September 20, 2019 ("Response to Amended Petition For Writ of Habeas Corpus") (ECF No. 50) the Philadelphia District Attorney argued that all of Petitioner's claims were either procedurally defaulted or meritless. However, as to the ineffectiveness claim based on a failure to call alibi witnesses, the District Attorney waived procedural default.[2] According to the District

---

[1] Before filing his habeas petition in federal court, Petitioner appealed to the Pennsylvania Superior Court, which affirmed his convictions. The Pennsylvania Supreme Court denied his petition for allocatur on February 10, 2000. On November 10, 2000, Petitioner filed a timely pro se petition under the Post-Conviction Relief Act ("PCRA") alleging five ineffective assistance of counsel claims, none of which mentioned trial counsel's failure to call alibi witnesses, which is the primary issue addressed by Judge Hey. The PCRA court dismissed the petition after Petitioner's PCRA counsel filed a "no merit letter," but the Superior Court reversed the dismissal, finding Petitioner was not given prior notice of the letter. On remand, the PCRA court dismissed the petition for lack of merit, which was affirmed by the Superior Court. On March 13, 2006, Petitioner filed a second PCRA petition, again alleging several ineffectiveness claims, but this petition was dismissed as untimely, and affirmed by the Superior Court. (See Original Report and Recommendation, ECF No. 77).

[2] A petitioner must exhaust their available state court remedies before seeking federal habeas relief. 28 U.S.C. § 2254(b)(1)(A). When a petitioner fails to exhaust their state court remedies because either: (1) there was a procedural bar to relief in state court, or (2) they did not comply with the state's procedural rules in presenting the claim, the claim is subject to the rule of procedural default. Coleman v. Thompson, 501 U.S. 722, 750 (1991). A court can review a procedurally defaulted claim if petitioner can show either "cause and prejudice" for the default, or that a "fundamental miscarriage of justice" will result absent review. Werts v. Vaughn, 228 F.3d 178, 191 (3d Cir. 2000). The government may also waive procedural

Attorney, their office was in the process of conducting an internal investigation of Petitioner's alibi claim and had determined that trial counsel's failure to present these alibi witnesses may have been unreasonable, and that Petitioner may have been prejudiced by this failure. Therefore, the District Attorney agreed that an evidentiary hearing was necessary. (Id.)

On September 25, 2019, I referred the case to United States Magistrate Judge Elizabeth T. Hey for a Report and Recommendation. After Judge Hey scheduled the evidentiary hearing, but before it took place, the District Attorney changed course and on May 7, 2021, through a "Supplemental Response," conceded that Petitioner was entitled to relief on the alibi claim. In doing so, the District Attorney explained that the parties planned to submit stipulations that would obviate the need for an evidentiary hearing. The District Attorney explained: "[i]n order to facilitate this Court's review (and consistent with its ethical duties as prosecutors), the Commonwealth intends to join [Petitioner] in filing Stipulations of Facts representing the relevant facts as disclosed during the Parties' review of the case and the [Conviction Integrity Unit]'s independent investigation of [Petitioner]'s claims." According to the District Attorney, Judge Hey could accept these stipulations in lieu of holding an evidentiary hearing:

> Factual stipulations are "formal concessions . . . that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the L. v. Martinez, 561 U.S. 661, 677–78 (2010) (quoting 2 K. Broun, McCormick on Evidence § 254, p. 181 (6th ed. 2006)

---

default, either explicitly or by failing to raise it as an affirmative defense. Trest v. Cain, 522 U.S. 87, 89 (1997).

Although Petitioner did not exhaust his alibi ineffectiveness claim in state court, the District Attorney explicitly waived the procedural default in its response to his petition. (ECF No. 50.) And in any event, Judge Hey found Petitioner additionally met the cause requirement for bypassing procedural default because he showed "requisite diligence" in attempting to raise his ineffectiveness claim in state court, and thus, an evidentiary hearing to take additional evidence on the claim was permitted. (Original Report, p. 18). Judge Hey also reevaluated the case in light of Shinn v. Ramirez, 142 S. Ct. 1718 (2022), which was decided after I remanded the petition for an amended recommendation and concerned the introduction of new evidence to overcome procedural default for similar types of claims. For reasons set forth in more detail in her amended recommendation, Judge Hey concluded that Shinn did not affect her ability to hold an evidentiary hearing in this case. (See Amended Report and Recommendation, p. 5, ECF No. 93.)

> (footnote omitted)). In other words, a joint stipulation to facts "admits that there is no dispute as to the facts[.]" 83 C.J.S. Stipulations § 86 (footnote omitted). In light of the undisputed factual record, which the Parties intend to memorialize with formal stipulations, the Commonwealth no longer believes an evidentiary hearing to be necessary to resolve Oliver's ineffective assistance of counsel claim.

(Supp. Resp. to Am. Pet., p. 2, ECF No. 73.) I note that this explanation for accepting concessions has no connection to the collateral review posture of this case, which as set forth infra, presents a unique and narrow set of circumstances.

On May 13, 2021, the parties submitted Stipulations with an agreed-upon statement of facts supporting their joint position that Petitioner was entitled to relief. The Stipulations detailed the parties' investigation into Petitioner's alibi claim and how they arrived at their joint recommendation to grant relief. The parties agreed that trial counsel, who died in 2010, had investigated Petitioner's alibi defense and identified two potential alibi witnesses, June Bell and Jadean Whitmore, neither of whom were called as witnesses at trial. Ms. Bell and Ms. Whitmore provided affidavits to Petitioner's habeas counsel dated February and May of 2018 which were attached to Petitioner's Amended petition, asserting that they were willing to testify at Petitioner's trial. According to the affidavits, Ms. Bell would have testified that she was with Petitioner at the time of the murder, that she met Petitioner at Ms. Whitmore's residence on the night of the murder, and that she and Petitioner left Ms. Whitmore's residence and spent the night at a friend's apartment on Spring Garden Street. Ms. Whitmore would have testified that she saw Petitioner leave her residence with Ms. Bell and that he did not return until 11:00 a.m. the following day.

Both the Stipulations and the Supplemental Response emphasized that the Commonwealth's lawyers found the alibi witnesses to be "credible." See e.g., Joint Stipulations ¶ 25 (" . . . the Commonwealth agrees that the alibi evidence from Bell and Whitmore is credible . . . "); Joint Stipulations ¶ 39 ("[b]oth parties have separately interviewed Bell and Whitmore . . . [and]

4

stipulate that their testimony would have been sufficiently credible . . . "). Based in large part on counsel's credibility determinations, the District Attorney pressed that an evidentiary hearing before a judicial officer was not necessary. See Supp. Resp. to Am. Pet., p. 2 (". . . the Commonwealth no longer believes an evidentiary hearing to be necessary . . .").

Thereafter, on August 27, 2021, Judge Hey issued a Report recommending that Petitioner be granted relief on his alibi claim. While Judge Hey had initially determined that it was appropriate to hold an evidentiary hearing regarding the alibi claim, after the District Attorney conceded relief, she agreed to accept the parties' stipulations without holding a hearing. (Original Report, p. 20.) On the issue of witness credibility, Judge Hey cited the party's Stipulations and noted "while acknowledging that [Ms. Bell and Ms. Whitmore's] testimony would not be unimpeachable, the parties maintain that their testimony would have been sufficiently credible such that it likely would have raised a reasonable doubt as to [Petitioner's] guilt." (Id. at 30)(quoting the parties' Stipulations ¶ 39.)

Upon review of Judge Hey' Report, I remanded the matter back to her for an evidentiary hearing on the sufficiency of Petitioner's alibi claim, finding that it was inappropriate for the lawyers to attempt to substitute their own assessment of the witnesses' credibility for that of the Court's. (ECF No. 81.)

**II.     Analysis**

On August 24, 2022, Judge Hey conducted an evidentiary hearing wherein June Bell and Jadean Whitmore testified. Ms. Bell's testimony was generally consistent with the statement she provided in her affidavit. She recalled that she met Petitioner at Ms. Whitmore's residence on the night of the murder and left with him to spend the night at a room she was renting on Spring Garden Street, where they both stayed until the following morning. (Amended Report, p. 8.) Ms.

Whitmore's testimony was also fairly consistent with her police interview and affidavit. She stated that on the night of the murder, Petitioner left her house accompanied by Ms. Bell, and he did not return until 11:00 a.m. the following day. (Id. at 20.)

On October 27, 2022, Judge Hey issued an Amended Report wherein she again recommended I grant relief on Petitioner's Strickland[3] claim based on counsel's failure to pursue and present an alibi. (Amended Report, p. 26.) Despite some minor inconsistencies in their testimony,[4] Judge Hey independently found both witnesses to be credible. Judge Hey noted that, "[a]lthough various accounts place the movement of Ms. Bell and Petitioner at different times, all of the evidence indicates that they left Ms. Whitmore's house together in the evening hours and arrived at Ms. Bell's house together. . . before the Bates murder." (Id. at 17.)

In addition to evaluating the substance of Ms. Bell's and Ms. Whitmore's testimony, Judge Hey also carefully assessed the witnesses' demeanors and noted that there was nothing to suggest that their testimony was untrustworthy:

> [T]here was nothing about Ms. Bell's demeanor, tone, or language at the evidentiary hearing to suggest that her testimony contained hyperbole or subterfuge, or that she testified out of fear or undue influence of any kind. Although Ms. Bell and Petitioner were best friends at the time of his arrest for the Bates murder, at the evidentiary hearing she testified that she had not seen Petitioner since they were about sixteen years of age, when they said goodbye to each other on the morning of his arrest, and that she did not visit him in prison.
>
> . . .

---

[3] Under Strickland v. Washington, a petitioner may establish an ineffective assistance of counsel claim if they demonstrate that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's error the result would have been different." 466 U.S. 668, 688, 694 (1984).

[4] There were some minor inconsistencies in the witnesses' testimony, but Judge Hey found that they "involved minor details and [were] largely reconcilable." (Amended Report., p. 16). For example, there was a question as to whether Petitioner was intoxicated on the night of the murder. In her interview with a private investigator, Ms. Bell stated she could not recall the exact times she and Petitioner left Ms. Whitmore's residence and arrived on Spring Garden Street, because "we were so intoxicated." But at the hearing, Ms. Bell explained that she was not referring to Petitioner when she said "we," she was referring to herself and another friend they were with, and she reiterated that Petitioner did not drink alcohol that night. (Id.)

> Ms. Whitmore's neutral attitude toward Petitioner suggested that her willingness to testify on his behalf was not motivated by emotional attachment or familial bonds[.]

(Id. at 16, 24.)

After conducting an independent judicial evaluation of the witnesses' credibility, Judge Hey concluded, "trial counsel's failure to present these known witnesses was unreasonable and caused prejudice insofar as their testimony would likely have changed the outcome of the trial. . ." (Id. at 26.)

Upon my review of Judge Hey's Amended Report and my own independent review of the record, I agree that Petitioner is entitled to relief on his ineffectiveness claim based on trial counsel's failure to call alibi witnesses. Although trial counsel subpoenaed Ms. Bell to appear and intended to present her as an alibi witness, it was unreasonable for counsel not to make any further efforts to either locate her or request a continuance when she did not appear for trial. Although less critical to Petitioner's defense, the failure to call Ms. Whitmore was also unreasonable, especially given that her name was mentioned by the prosecutor as a potential witness during voir dire. (Original Report, p. 33.)

I also agree that Petitioner was prejudiced by his counsel's error because the Commonwealth's case was based entirely on Marcus Best's testimony that Petitioner was one of the shooters who came from the Goldwire house the night of the murder, while several other witnesses testified that Petitioner was not present that night.[5] Accordingly, "had counsel obtained testimony from multiple available and willing witnesses that Petitioner was elsewhere at the time of the Bates murder, their

---

[5] Monique Goldwire, sister of Omar and Khalif Goldwire, testified at trial that she was at the Goldwire residence the night of the murder with Khalif, his girlfriend, and Marcus Best but did not see Petitioner. Ricky Smith, friend of Jadean Whitmore, was an eyewitness to the murder and testified at trial that Petitioner was not one of the shooters based on the height and build of the assailants (he could not offer a more precise identification because the assailants were wearing ski masks). Thelma Goldwire testified at the penalty phase that she did not see Petitioner in her house the night of the murder. (Original Report, p. 31.)

testimony would likely have changed the outcome of the trial." (Id. at 33–34.) Judge Hey properly emphasized the overall weakness of the Commonwealth's case at trial and concluded that for this reason "the prejudice prong of counsel's ineffectiveness is straightforward." (Id. at 33.) I agree that trial counsel's errors likely deprived Petitioner of a fair trial, particularly in light of the fact that the Commonwealth's case was so thin. Pierce v. Adm'r New Jersey State Prison, 808 F. Appx. 108, 113 (3d Cir. 2020) (citing Strickland, 466 U.S. at 696) ("a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."). For the reasons outlined above, I find that relief is warranted on Petitioner's alibi claim.

The District Attorney is reminded that when collateral relief is premised on credibility determinations—here the testimony of two alibi witnesses—an independent merits review necessarily requires an evidentiary hearing during which the witnesses' credibility can be properly evaluated by a judge. See Commonwealth v. Brown, 196 A.3d 130 (Pa. 2018). Counsel's stipulation does not relieve a federal judge of the duty and prerogative to determine the facts upon which habeas relief must be founded.

An appropriate Order follows.